IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON KARL BAUSCH,<br><br>Defendant. | CR 16–28–BU–DLC<br><br><br>ORDER |

Before the Court is Defendant's Motion to Suppress (Doc. 18). For the reasons given below, the Court denies Defendant's motion.

**FACTUAL BACKGROUND**

At approximately 6:00 p.m. on July 24, 2016, Madison County law enforcement officers arrived at Defendant Jason Bausch's residence in Ennis, Montana, following a report that a woman ("KG") was being held there against her will. About a half an hour later, KG ran out of the house, with Bausch following and yelling. Following a brief struggle, officers subdued and then arrested Bausch.

That night, Madison County Sheriff Roger Thompson applied for and received a search warrant to search the residence. The warrant authorized a search

-1-

for: (1) a Colt .45 handgun; (2) papers written by Bausch regarding his relationship with KG or with others; (3) papers showing dominion and control of the residence; and (4) property belonging to KG. At 11:00 p.m., Officer Thompson, with the assistance of three Madison County deputies, arrived to execute the search warrant. KG and a victim advocate arrived at the house at that time, too. KG informed officers that she had been Bausch's live-in girlfriend for several months and that she was there to collect her belongings.

Law enforcement searched the residence for about two hours. KG was at the house for approximately half of the search. The officers asked KG for advice in locating the items enumerated on the warrant, and she assisted in the officers in finding the Colt .45. KG also located and showed to law enforcement officers three auto sears; Bausch's possession of the auto sears forms the basis of the federal charges at issue.

## DISCUSSION

Bausch argues that the physical evidence supporting the government's charges should be suppressed because: (1) KG was acting as a government agent when she turned the auto sears over to law enforcement; (2) the search and seizure of the auto sears exceeded the scope of the search warrant; and (3) the evidence—the auto sears themselves—should be suppressed. The government

disagrees that KG was acting as a government agent. More to the point, the government argues that KG, an inhabitant of the house, consented to the search. The Court does not reach Bausch's arguments for suppression because it determines that, under the consent exception to the warrant requirement, the search did not violate the Fourth Amendment when KG, a resident of the home, offered the evidence that Bausch now seeks to suppress.

The Fourth Amendment protects against "unreasonable searches and seizures" and requires that warrants may issue only "upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment does not itself specify when a warrant is required. *Fernandez v. California*, 134 S.Ct. 1126, 1132 (2014).

Although a warrant generally must issue before a home may be searched, "certain categories of permissible warrantless searches have long been recognized," including consent searches. *Fernandez*, 134 S.Ct. at 1132. "Consent searches are part of the standard investigatory techniques of law enforcement agencies." *Schneckloth v. Bustamente*, 412 U.S. 218, 231–32. When "properly conducted," they are "constitutionally permissible and wholly legitimate aspect[s] of effective police activity." *Id.* at 228. Two subsidiary issues mus be resolved in

order to determine whether the consent exception to the warrant requirement applies here. First, did law enforcement reasonably believe that KG had the authority to consent to the search? And second, if so, did KG give consent? The Court answers both questions in the affirmative.

Unless a "physically present inhabitant" expressly refuses consent, *Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006), "consent by one resident of jointly occupied premises is generally sufficient to justify a warrantless search." *Fernandez*, 134 S.Ct. at 1133. Where law enforcement reasonably believes that the person giving consent is a resident, the consent exception applies—even if the individual was not truly a resident and did not, in fact, have actual dominion over the home. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990). Moreover, the consent of one co-tenant supersedes the wishes of an absent resident—even where absence is due to the resident's arrest by the law enforcement officers that go on to conduct the search. *Fernandez*, 134 S.Ct. at 1134.

Here, the officers reasonably believed that KG had authority to consent to the search. Before the search occurred, as evidenced by Sheriff Thompson's initial application for a search warrant, officers saw the crime as likely one of domestic violence and knew that KG lived with Bausch. (Doc. 28-3 at 3–4.) According to Bausch, during the search, Sheriff Thompson believed that KG was

on the scene to collect her belongings.  (Doc. 23 at 3.)  These facts gave rise to a reasonable inference that KG was a co-tenant of the residence.

Consent must be voluntarily given, but it may be implied from the circumstances.  *Schneckloth v. Bustamente*, 412 U.S. at 222; *United States v. Rosi*, 27 F.3d 409, 411–12 (9th Cir. 1994 ).  The government bears a fairly heavy burden of establishing the existence of effective consent "when consent would be inferred to enter and search a home."  *Rosi*, 27 F.3d at 411–12 (citation and internal quotation marks omitted).  That burden may be met when a resident willingly cooperated with law enforcement officers, offering, for example, information about the location of evidence.  *Id.* at 413–14; *see also United States v. Gilbert*, 774 F.2d 962, 963 (9th Cir. 1985) (per curium); *United States v. Meifa*, 953 F.2d 461, 466 (9th Cir. 1991); *United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007).

Here, there is no question that KG willingly cooperated with officers during the search.  KG offered information about the specific items described within the search warrant, particularly the Colt .45.  What is more, she voluntarily located and showed to officers the three auto sears, which as Bausch notes, were not described in the search warrant and were well-hidden from view.  The officers were not looking for—nor did they expect to find—the auto sears.  Indeed, Bausch

contends that there would have been no federal charges were it not for KG's eager participation in the search, as the officers would not have found these items but for her assistance. The facts, as developed in Bausch's own brief, make it clear that KG was happy to help law enforcement with the search. If consent may be inferred from a suggestion that evidence may be found in a particular area, *Rosi*, 27 F.3d at 413–14, then it may be inferred here, where a resident physically located evidence for the specific purpose of showing it to law enforcement. KG, whom the officers reasonably understood to be a resident, gave consent to search the home.

In his reply brief, Bausch argues that—even if the above analysis were correct—the consent exception does not apply here for several reasons: (1) that the government has not proven that it relied on KG's consent; (2) that, because a warrant was granted, officers were limited by the scope of the warrant such that the consent exception does not apply; and (3) that the government should have known that KG and Bausch had ended their relationship that night and that KG would never again return to the home.[1] None of these theories succeed. First, Bausch presents no law supporting his claim that the government must document

---

[1] Bausch also argues in his reply brief that KG may have smuggled the auto sears into the home in order to frame him. The Court does not address this argument because it was not raised in the brief supporting the motion to suppress and because it is wholly speculative.

the presence of consent at the time of the search; such formalities are entirely absent from those cases that address the consent exception.  Second, if consent were given, the warrant was unnecessary, so it cannot reasonably be argued that the scope of the search warrant controls over a valid exception to the warrant requirement.  And third, officers were not unreasonable in determining that KG was a resident at the time of the search: a violent event does not necessarily sever an abusive relationship; even if that relationship were severed, the severance of the romantic relationship does not automatically and immediately sever co-tenancy[2]; and there appears to be no question that KG acted lawfully in collecting her belongings from the home, so that even if she was moving out, she had not yet completed the task.

Bausch's arguments do not raise any doubt about the applicability of the consent exception.  Because there was no warrant requirement, law enforcement's discovery of the auto sears met the requirements of the Fourth Amendment.  Thus, the Court does not reach Bausch's argument that KG was a government actor who exceeded the scope of the search warrant.  The evidence will not be suppressed.

---

[2] This appears to be the crux of Bausch's argument that officers should have known the relationship was over, as he points to no evidence—aside from KG's desire to collect her belongings—that KG communicated to officers that she had no relationship with Bausch and no right to be at the home.

Accordingly, IT IS ORDERED that Defendant's Motion to Suppress (Doc. 18) is DENIED. The hearing scheduled for March 14, 2017, at 10:30 a.m. before this Court is VACATED.

DATED this 8th day of March, 2017.

_____
Dana L. Christensen, Chief District Judge
United States District Court